**EXHIBIT 3**

**Honeywell, Mark G.**

| | |
|---|---|
| From: | Robinson, Christine [Christine.Robinson@kingcounty.gov] |
| Sent: | Friday, May 08, 2009 4:06 PM |
| To: | Honeywell, Mark G.; C. Nelson Berry III; Paul E. Simmerly |
| Subject: | Ruling on Wharton v. Berry & Zundel 07-2-14321-1 SEA |

Importance:          High

Attachments:          2211_001.pdf; 2212_001.pdf

2211_001.pdf (1    2212_001.pdf
MB)                    (322 KB)

I thought this would be the quickest way to give you the ruling. Let me know if you need hard copies as well.

Sincerely,

Christine Robinson
Bailiff to Judge Kimberley Prochnau
King County Superior Court
401 4th Avenue North, #3C
Kent, WA  98032
Phone: 206-296-9260
Fax:     206-205-2645
christine.robinson@kingcounty.gov
IMPORTANT:  In order to avoid inappropriate ex-parte contact, you are hereby directed to forward this communication to all other counsel not already copied on this e-mail.

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## KING COUNTY

WHARTON ET ANO

        Plaintiff,

        vs.

BERRY & ZUNDEL ET ANO

        Defendant's

CAUSE NO. **07-2-14321-1 SEA**

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: ATTORNEY FEES

THIS MATTER came before the undersigned Judge for trial before a jury; the jury reached a verdict and the jury's Special Verdict Form was filed on December 10, 2008.

This court entered its preliminary rulings on the Defendants' post-trial motions for an award of attorney fees and costs of collection in a written opinion dated January 31, 2009 (attached hereto as Appendix A and incorporated herein). The Court directed the defendants to prepare supplemental fee declarations which *"... segregate time spent only on the contract claim and negligent misrepresentation defense... The court also expects that it will not see duplicate billings i.e. more than one attorney for each defendant working on a particular aspect of the case..."*

The Court has now been provided with supplemental attorney fee declarations, supplemental responses[1] and replies, and being otherwise fully advised in the premises enters the following Findings of Fact and Conclusions of Law:

---

[1] The Court received an objection to consideration of Dr. Smith's declaration in response to the motion for legal fees. To the extent that Dr. Smith renders an opinion as to the legal fees, the court disregards



NOW THEREFORE, this Court does hereby make the following:

## FINDINGS OF FACT

1. **BACKGROUND**

   a. The findings made by the jury in the Special Verdict Form are adopted as the findings of this Court.

   b. On October 5, 2006, Marcia Wharton entered into an Agreement for Legal Services with Berry & Zundel, P.L.L.C., at the behest of Eric Krening. The contract was signed by Dr. Marcia Wharton and Mr. Krening. That Agreement contained the following provision:

      > *Client agrees to pay a reasonable attorney's fee and any costs of collection in the event that any action is necessary to collect any fee, cost or disbursement through a collection agency or otherwise.*

   c. After Eric Krening left that law firm, Dr. Wharton agreed to continue to retain Mr. Krening as her lawyer. The jury found (Question No. 24) that Mr. Krening and Marcia Wharton modified the existing Berry & Zundel contract rather than creating a new contract.

   d. There is no unfairness or surprise to Dr. Wharton in requiring her to adhere to the terms of the retainer agreement. She had previously been provided and signed a written agreement outlining all the relevant terms of the contract. The only oral modifications were to pay Mr. Krening instead of Berry and Zundel for the work that was being done as well as to provide her a more beneficial attorney fee rate.

   e. Dr. Marcia Wharton retained Defendants Berry and Zundel and Eric Krening to help her obtain educational services for her ten year old son. Her son is severely disabled and is eligible for special education services under the Federal Disabilities Education Act (IDEA). The firm of Berry and Zundel contracted with Eric Krening as an independent contractor. Mr. Krening represented Dr. Wharton at a special education hearing. Shortly after the hearing was held, the law firm of Berry and Zundel ended their relationship with Mr. Krening and Dr. Wharton chose to continue her attorney-client relationship with Mr. Krening. Dr. Wharton

---

and does not consider such opinions. To the extent he purports to provide hearsay evidence, the court disregards any inadmissible hearsay. However, Dr. Smith is entitled to make arguments as to the fees based on the evidence. He is entitled to draw the court's attention to apparent contradictions between the various fee declarations or to refute matters of which he has first- hand knowledge, i.e. the time spent at a deposition where he was present for such deposition.

prevailed on some but not all of her claims at the special education (IDEA) hearing.

f. Some but not all fees billed under the Agreement for legal services were paid by Dr. Wharton. After she was contacted about paying the remainder of the bill, she and her husband, Dr. Paul Smith, filed a complaint on May 2, 2007 naming both the law firm and Mr. Krening as defendants. The Plaintiffs' 19 page Complaint alleged that Mr. Krening had given her substandard legal advice and had botched the special education case. The complaint also alleged that the charges under the legal services agreement were unreasonable, excessive, and poorly documented (Para 3.17). The complaint claimed that the Berry law firm and Mr. Krening misrepresented their and his level of experience and expertise and made various promises of success, and distributed a brochure containing false and material misrepresentations.

g. The defendants answered, denied the claims, and counterclaimed to recover their fees due under the legal services agreement.

h. Defendant Berry claimed and ultimately recovered through a jury verdict unpaid fees in the amount of $8,040. Defendant Krening also counterclaimed and ultimately recovered through a jury verdict unpaid fees of approximately $30,000. (The Plaintiffs were not successful on any of their claims.)

i. Defendant Berry now seeks over $120,000 in fees pursuant to the Agreement for Legal Services while Defendant Krening seeks over $360,000 in fees for time expended by himself and three separate attorneys who at various times during the litigation worked on this case.

j. Krening employed three separate attorneys at various stages of the proceedings. Mr. Caryl billed time from 3/30/07-1/28/08, Mr. Jackson from 2/08-10/08 and Mr. Simmerly from 9/26/08 up through post-trial proceedings. Mr. Jackson and Mr. Simmerly are principals in a law firm that has employed Mr. Krening (either as an employee or independent contractor) during at least a portion of this litigation.

k. Dr. Wharton and Dr. Smith's (Plaintiffs) complaint alleged the following causes of action:

  a. Professional Negligence (legal malpractice)
  b. Breach of Fiduciary Duty (failure to exercise ordinary care and loyalty)
  c. Negligent misrepresentation
  d. Negligent hiring of Krening by Berry and Zundel
  e. Negligent supervision of Krening by Berry and Zundel
  f. Negligent infliction of emotional distress to Dr. Wharton and her son
  g. Violation of Consumer Protection Act (generally realleging claims and stating that such actions constituted an unfair or deceptive practice )

m.   The complaint requested damages, court costs, and attorneys' fees as well as a trebling of damages under the CPA in an amount to be proven at trial. The Plaintiffs responded and denied the counterclaims.

n.   While not explicitly pled as an affirmative defense to the defendants counterclaim to enforce the legal services contract, the Plaintiffs at trial moved to have their claims of negligent misrepresentation treated as an affirmative defense to the contract claim. The court granted that motion over the defendants' objection.

o.   Although the Plaintiffs' consumer protection and negligent hiring claims involved some of the same factual allegations as contained within the Plaintiffs' affirmative defense of negligent misrepresentation: i.e. that defendant Krening misrepresented his experience and expertise and that the brochure made false representations which induced the formation of the contract, the contract was not central to those claims. The consumer protection claim also involved some additional facts not necessary to be proven with respect to the affirmative defense, such as the claim that the defendants advertised to the public in general and that the act or practice affected the public interest. The Plaintiffs produced at trial two prior clients of Mr. Krening on this subject. The negligent hiring claims also required some additional facts not necessary to be proven with respect to the affirmative defense such as the relationship between Berry and Zundel and Berry and Zundel's knowledge of Mr. Kerning's experience and expertise. Neither the consumer protection nor the negligent hiring claims were pled as affirmative defenses.

p.   The Plaintiffs' legal malpractice, negligent supervision and negligent infliction of emotional distress claims involved a different core of facts i.e. Defendant's Krening allegedly poor performance as Dr. Wharton's lawyer.

q.   The Plaintiffs' breach of fiduciary duty claim appeared to contain allegations both relevant and irrelevant to the contract dispute, i.e. that Krening failed in his duty of loyalty by allowing his personal issues to interfere with his handling of Dr. Wharton's case, as well as failing to disclose the scope of his experience and success before entering into the contract. This claim was also not dependent upon the existence of the contract.

r.   None of these claims made by plaintiff (with the exception of the negligent misrepresentation were pled as affirmative defenses to the counterclaim for enforcement of the Agreement for Legal Services.

s.   The legal malpractice claim was dismissed on 12/20/07 by summary judgment. It is reasonable to infer up until this time the majority of attorney fees expended were on that claim. That was the most significant claim and represented the greatest risk to the defendants, especially with respect to their professional reputations.

t.   The emotional distress claim was dismissed by summary judgment on 6/20/08.

u.   The negligent supervision claim against Defendant Berry was withdrawn by Plaintiffs at trial.

v.   The negligent hiring claim was dismissed by directed verdict at trial.

w.   The remaining claims that survived dismissal or withdrawal and were submitted to the jury were the tort breach of fiduciary duty and the statutory Consumer Protection Act claims advanced by Plaintiffs and the contract claims advanced by defendants, as well as the affirmative defense of negligent misrepresentation to enforcement of the contract.

## 2.   CARYL, JACKSON, SIMMERLY FEES

a.   Applying the factors set forth in RPC 1.5, Michael Caryl's hourly rate of $300 per hour for his fees are reasonable. However, the bulk of Mr. Caryl's time was spent dealing with the malpractice claim and encouraging Mr. Krening to appropriately complete discovery; Krening is not entitled to fees for this work.

b.   Applying the factors set forth in RPC 1.5, Mr. Jackson's fees of $275 per hour are reasonable. However, the majority of the fees charged were not segregated between successful and unsuccessful efforts and contract claims as compared to tort claims. Nor has the court been provided with any information or evidence of the fee agreement between himself and Mr. Krening, who is currently his colleague.

c.   Applying the factors set forth in RPC 1.5, Mr. Simmerly's fees of $200 per hour are reasonable. Mr. Simmerly represented Mr. Krening on a contingency basis. A multiplier is not appropriate in these circumstances given that, although he entered the case shortly before trial, the contract claim was viewed as a "slam dunk", and he had the assistance of a knowledgeable client, Mr. Krening, as well

as co-defendant Berry. Mr. Simmerly's records also do not appear to be contemporaneously prepared but reconstructed from memory.

d.  Rather than attempt to apportion fees between Krenings' various attorneys, the court will award Mr. Krening fees a lump sum for time expended by him and his attorneys.

e.  Independent of Mr. Simmerly, Caryl and Jacksons' recitations and the comments of Mr. Smith, this court has reviewed the entirety of the billings up to the beginning of trial. The court is well aware of the claims and is familiar with the evidence and arguments presented at trial. The court sets forth its independent judgment (below) as to the reasonable fees incurred by Mr. Krenings' attorneys in collecting his fees and defending himself against the negligent misrepresentation claim. [2]

## 3.  KRENING FEES

a.  Applying the factors set forth in RPC 1.5, Mr. Krening's fees of $250 are an appropriate hourly rate given Kerning's experience; however a multiplier is not appropriate under the circumstances.

b.  Krening's time bills do not segregate for contract claims and he fails to provide sufficient information to allow the court to identify his legal efforts such as identifying the work by docket number, as previously ordered. For example, his bills reflect a 5-7-07 contact with Bill Dussault (malpractice expert); and emails re 11-21-07 Dussault deposition. (Bill Dussault was an expert previously identified for the malpractice claim and was not utilized at trial).

c.  Mr. Krening has also not adequately explained why it was necessary to him to be working on the case as an attorney at the same time as he had counsel. According to Mr. Caryl's, Jackson and Simmerly's fee bills, Mr. Krening had counsel almost through the entirety of the case. Certainly, once he hired Mr. Simmerly there was no need for Mr. Krening to perform legal work for which he is claiming fees.

d.  Independent of Mr. Krening's recitation and the comments of Mr. Smith, this court has reviewed the entirety of the billings up to the beginning of trial. The

---

[2] To the extent that time spent on other claims could not be reasonably segregated from the contract claims, this ruling is intended to also reflect the court's independent judgment as to an appropriate fee based on a percentage of time spent.

court is well aware of the claims and is familiar with the evidence and arguments presented at trial. The court sets forth its independent judgment (below) as to the reasonable fees incurred by Mr. Krening in collecting his fees and defending himself against the negligent misrepresentation claim.[3]

## 4. BERRY FEES

a.   Applying the factors set forth in RPC 1.5, Mr. Berry's fees $300 per hour are reasonable.

b.   He clearly took the laboring oar at trial and was more substantially involved at trial (not surprisingly since he had been on the case from the beginning).

c.   Billing statements do not adequately segregate time spent on contract claims and most records are too generic to identify whether time spent on contract claims. For example, he billed for 14 hours on 12/3/2008, including not only trial time but time to research and draft motion on directed verdict on claims of negligent hiring and supervision. He also billed on 12-31-07. (Subs 102 and 103) regarding Plaintiff's motion for reconsideration of summary judgment dismissing malpractice claim.

d.   Independent of Mr. Berry's recitation and the comments of Mr. Smith, this court has reviewed the entirety of Mr. Berry's billings up to the beginning of trial. The court is well aware of the claims and is familiar with the evidence and arguments presented at trial. The court sets forth its independent judgment (below) as to the reasonable fees incurred by Mr. Berry in collecting his fees and defending himself against the negligent misrepresentation claim.[4]

## 5. TIME EXPENDED BY ATTORNEYS PRE-TRIAL ON CONTRACT CLAIMS AND AFFIRMATIVE DEFENSES OF NEGLIGENT MISREPRESENTATION

a.   Over 50 pre-trial orders were issued in this case. However, the vast majority either did not concern the contract claims or involved "unproductive time" inasmuch as defendants were unsuccessful as to these motions and have failed to

---

[3] To the extent that time spent on other claims could not be reasonably segregated from the contract claims, this ruling is intended to also reflect the court's independent judgment as to an appropriate fee based on a percentage of time spent and the significance of the compensable claims vs. the non-compensable claims.

[4] To the extent that time spent on other claims could not be reasonably segregated from the contract claims, this ruling is intended to also reflect the court's independent judgment as to an appropriate fee based on a percentage of time spent vs. the non-compensable claims.

show that these motions were productive with respect to the contract claims or affirmative defenses.

b.    It is reasonable that defendants incurred more time than would be typical on a contract collection claim given the intense attention to detail and the personal nature of the dispute, as well as Dr. Smith's lack of formal legal training Dr. Smith represented his wife and himself in initially filing the complaint and although they had counsel throughout some of the pre-trial proceedings, they represented themselves at trial. Although not an attorney, Mr. Smith is a tenured Professor of Mathematics at the University of Washington, is very bright and studious, is obviously very interested in the law and this case, and spent a great deal of time on this case.

c.    It is apparent that decisions made by all of the parties in this case were not made purely based on economic considerations.

d.    The evidence, including the billing records, appear to demonstrate that both Mr. Krening and Dr. Smith, as well as to a lesser extent Mr. Berry, engaged in an excessive amount of time on this case particularly in terms of communications with each other, either directly or through counsel.[5]  Mr. Krening's billing records for May of 2008, for example, indicate that he reviewed, responded, or initiated over 200 emails concerning this litigation. Billing records for other months indicate a similar amount of time spent on voicemails, telephone calls and emails with no explanation as to how such time was productive (with respect to any of the claims in this case.)

e.    It is also apparent that additional time was incurred due to some confusion during certain stages of the pre-proceedings as to the scope of Judge Canova's rulings. (This is not surprising given that over 50 motions were filed in the course of the proceedings, including many motions for reconsideration.)

f.    The defendants' time billed on this case is grossly disproportionate to the amount in controversy--$8000 with respect to defendant Berry and $30,000 with respect to defendant Krening.

g.    **Communications with client and co-defendants** - While each attorney recorded a substantial amount of hours spent on communications, the defendants have failed to show how this was productive or necessary given that the core facts of

---

[5] Although Dr. Smith questions the accuracy of some of these billing records, he does not deny participating in and initiating many of these email and telephone exchanges. See, also, Robert Jackson declaration, Sub No. 498.

the contract dispute were relatively simple. The court awards 10 hours to Berry and 15 hours to Krening communications for this relatively straightforward contract collections case for a total of **$3000 to Defendant Berry and $3000 to Defendant Krening.**[6]

h.  **Drafting of Pleadings**--Drafting of Pleadings such as Notice of Appearance, Answers and Counterclaims-- All time spent on drafting pleadings could have and should have been segregated (except with respect to, of course, the notice of appearance. **The court awards $500 in attorneys' fees each to Defendants Krening and Berry for the drafting of pleadings.**

i.  **Discovery**— Time spent on Discovery included interrogatories propounded to Berry, Krening and Wharton and depositions taken of Berry, Krening, Wharton and Smith. Berry spent time reviewing Kerning's answers to interrogatories, participating in Dr. Wharton and Dr. Smith's depositions. Given that Dr. Smith was not present for the formation of the contract between Dr. Wharton and the defendants and was not a fact witness to the events related to the formation of the contract , it is unclear as to why it was necessary to take his deposition. On Dr. Wharton's deposition alone, Berry spent over 14 hours on preparing for attending her deposition. The court awards 10 hours each  to Defendants Krening and Berry for conducting their own discovery—**for a total of $3000 to Berry and $2500 to Krening.**

j.  **Responding to Plaintiffs' communications**—Although Plaintiffs disputes the accuracy of billing records given that Berry and Kerning's records do not always gibe with regards to emails to and from Plaintiffs,  Plaintiffs do not deny that Dr. Smith sent these emails to defendants.  It is difficult to understand in hind sight, why defendants did not cut off informal communications between Dr. Smith and themselves given the excessive number of emails exchanged.  Krening's billing records of July 2008, for example, show hundreds of emails between himself and Dr. Smith, numerous ones which were apparently generated by Dr. Smith.  **The court awards 10 hours of time to Mr. Berry and Mr. Krening each ($3000 to Mr. Berry) and ($2500 to Mr. Krening.)**

k.  **Responding to Plaintiffs' Discovery**—Berry spent over 18 hours responding to Plaintiffs' Discovery, including attending his own deposition.  This was all after the legal malpractice claim had been dismissed.  The court has not considered some time that appears to be duplicative of defendant Krening's efforts, i.e. on 2/20/08 reviewing the motion to compel Krening to answer interrogatories and conferring with Krening.  **The court awards $4500 (15 hours at $300 an hour ) to Berry and $3750 to Krening (15 hours at $250 per hour).**

---

[6] In some cases, the billing records of Krening and Berry do not correspond.  For example, Krening billed for time in reviewing 17 emails between Berry and the plaintiffs on May 8—certainly a notable event if all of those emails occurred on that date.  Yet, Berry did not bill or even reference those emails in his billing statement.

l. **Settlement Negotiations--** Given the amount in controversy, the fact that there appeared to be very little room for compromise due to the Plaintiffs' extreme positions and what defendants believed to be a simple, clear case in their favor, relatively little time should have been spent on settlement of the contract claims. (Nevertheless, this court does require alternative dispute resolution as a condition of going to trial and defendants are entitled to at least a portion of their time spent at the settlement conference. With respect to Berry, the court was unable to find a record of time spent in the settlement conference although it did find a record of a settlement letter prepared for Judge Halpert. **The court awards to Berry $300 for one hour preparing for settlement negotiations. The court awards to Defendant Krening 1.5 hours for Simmerly's attendance at the ADR settlement conference with Judge Halpert on 10/22/08 for a total of $300.**

m. **Research—**The billing records fails to clearly segregate time spent on research concerning the contract claims. For example, the Berry billing records bill for time spent on 2/22, 2/25, 2/26, 2/27, 3/3/08 with respect to their Motion for summary judgment (Sub No. 153). That motion was either unrelated to the contract claims i.e. negligent supervision or was unproductive inasmuch as the motion was denied and Berry has failed to demonstrate that it materially assisted him in ultimately achieving a successful result on the contract claim. The court awards 10 hours of time for research related to the contract claims including time spent on researching and drafting jury instructions for a total of **$3000 to Defendant Berry and 2500 to Defendant Krening.**

n. All time spent on **pre-trial motions** can and should have, been segregated between unproductive time, time spent on non-contract claims, and time spent on the contract counterclaim and affirmative defense of negligent misrepresentation. The defendants largely failed to do this and the court was forced to search out this information itself.

o. Pre-trial motions: In reviewing record, it appears there were over 50 pre-trial motions, many of which were brought by defendants. Defendants largely failed to prevail with respect to those motions concerning the contract claims and affirmative defenses.

p. The only motions related to contract claims, in which Defendants (D) prevailed were:

   i. For Krening 4-11-08, (#188) allowing him to keep identity of clients secret, related to discovery concerning his past success. **The court awards four hours at $250 for this motion to Krening—for a total of $1000.**

   ii. For Berry and Zundel, 7-25-08, (#266) order excluding Peck as a witness, unless made available for deposition—this was a straightforward motion, not requiring research or extensive drafting.

> The Court awards 2 hours for this motion to Berry for a total of $600.

    iii. For Krening, 9-16-08 (multiple orders- #338G, 338H) denying motions for sanctions/protective orders re further discovery; unsuccessful as to other motions at same time. **The Court awards 2 hours for these motions to Krening at $250 per hour- for a total of $500.**

    iv. For Krening, 9-30-08, #367, granting motion to quash subpoenas re CLE records. **The court grants 2 hours time to Krening for this motion for a total of $500.**

    v. For Berry, 12-2-08, order excluding Peck as witness—this motion was made at the start of trial and the court has already taken into account in determining fees for trial time.

    vi. For Berry, 12-2-08, supplemental motion in limine—same as above.

q. Trial Preparation:

    i. Although Dr. Smith evidenced a high degree of preparation and intelligence during trial, it is obvious that either his personal investment in the case and/or his lack of formal legal training, made the trial much more time-consuming than it would have otherwise been.[7]. Plaintiffs disclosed over ten witnesses and 174 exhibits pre-trial. Plaintiffs listed witnesses, such as Jill Geary, with respect to claims that had already been dismissed. Plaintiffs filed a ER 904 notice with respect to their intent to introduce over 174 exhibits even though many of these exhibits clearly were not of the type that can be deemed authentic under ER 904 and were clearly hearsay i.e. emails from third parties to the Plaintiffs.

    ii. Berry reviewed and prepared objections to the Plaintiffs' ER 904 submissions in September of 2008 and billed approximately 5 hours for this time.

    iii. Neither Krening nor Berry called any witnesses other than the Plaintiffs and themselves, thus little time was needed on witness preparation with respect to the contract claims.

    iv. **The court awards a total of 20 hours to each defendant, including ER 904 time, time spent selecting exhibits, preparing witness testimony and cross examination for a total of $6000 to Berry and $4000 to Krening.**

7. **TIME SPENT AT TRIAL ON CONTRACT CLAIM AND AFFIRMATIVE DEFENSE OF NEGLIGENT MISREPRESENTATION**

a. By the time this case proceeded to trial, most of the important tort claims had been eliminated. Of the remaining claims advanced by the Plaintiffs, breach of fiduciary duty and the consumer protection act claim, the Court finds that most of the evidence and arguments advanced at trial concerning these claims also affected the contract claims. The Court finds that 90% of the time spent during trial and with the Court the day prior to trial were related to the contract claims and affirmative defenses.[8] The Court considers the following procedural history and facts in reaching this conclusion.

b. Plaintiffs' trial brief made several claims relevant to the contract dispute including claims that :
   a. Defendants had overbilled
   b. Brochure and statements were deceptive and Plaintiffs relied on the brochure and statements
   c. Claimed defendants misrepresented Krening's experience and access to experts
   d. Claimed defendants had engaged in fee gouging/inaccurate and inflated billings

c. Unlike pre-trial time, it would be difficult to segregate non-contract claims from contract claims and defenses. . For example, the two former clients of Mr. Krening who testified may have been called ostensibly to support the Consumer Protection claim but their testimony regarding his claims of prior experience and success were, if not directly relevant to the affirmative defense of negligent misrepresentation, likely to affect the jury's perception of this defense.

d. Preliminary motions and scheduling issues occupied an entire day on 12/2/08. The Clerk's minutes indicate that the Court engaged in a discussion of the courtroom rules in consideration of the Plaintiffs' pro se status. On 12/3 the court continued hearing preliminary motions, conducted voir dire and empanelled a jury. Opening statements were made and the Plaintiffs' examination of Dr. Wharton commenced. Trial proceeded as follows:12-3—Preliminary motions, exhibits, voir dire, opening statements and perhaps half hour of Wharton's testimony; 12-4 –Plaintiffs case in chief, but issues also dealt w contract claim and affirm defense; 12-8- testimony, argument, motion for directed verdict, time spent after hours on jury instructions ; 12-9-time spent on jury instructions, exceptions, closing arguments.

---

[8] Dr. Smith's lack of formal legal training combined with his high degree of intelligence and interest in the lawsuit made the case more time consuming than what one would otherwise expect. Extra time was needed to address , court procedures, jury instructions and to ensure that Dr. Smith understood the scope of the court's motions in limine and did not inadvertently violate them. Sidebars took longer as more time was needed to discuss evidentiary objections.

e.   The Plaintiffs' case in chief continued on December 4. Prior to resting Plaintiffs withdrew their claim of negligent supervision against Defendant Berry, withdrew their claim of negligent misrepresentation against the defendants but indicated that they would seek to add a new claim that the contract is voidable due to material misrepresentation. Plaintiffs rested and defendants put on their respective cases.

f.   On 12/9/08 the parties put their jury instruction exceptions on the record. Jury instructions are read and closing arguments are made. A verdict was returned on 12/10.

g.   Witnesses at trial were Dr. Wharton, Mr. Krening, Mr. Berry, and two former clients of Mr. Krening called by defendants ostensibly to establish the consumer protection claims but who also testified as to alleged exaggerations of success and experience—evidence directly relevant to the affirmative defense of misrepresentation and the contract claim.

h.   Approximately one-third of Defendants Krening's trial brief was spent on fee issues.

i.   Standard jury instructions were offered on breach of contract claim

j.   Tailored instruction offered on negligent misrepresentation affirmative defense

k.   Plaintiffs offered a proposed jury instruction (10/31/08) that the contract was voidable because of 16 alleged misrepresentations by Krening, 5 misrepresentations in the brochure and alleged waiver by Berry and Zundel at meeting on 3-07.

l.   Plaintiffs offered 11 instructions on the negligent misrepresentation claim, 10 of which were non-standard.

m.   178 Exhibits marked and/or offered by Plaintiffs and approximately half had to do with the affirmative defenses to the contract claims. About half of those were rejected by the court as inadmissible and many were blatantly inadmissible on a number of grounds. i.e. Ex 70 and Ex 72 tax liens and Attorney's lien filed against defendant Krening. (Hearsay and ER 404(b)). Defendant offered less than a dozen exhibits.

n.   At trial, Dr. Wharton testified that she would not have entered into contract but for the alleged misrepresentations.

**Based on the court's notes as to time spent in trial and conferencing with court on jury instructions and motions, as well as Mr. Berry and Mr. Simmerly's billing records, the court finds that Defendant Berry should be awarded $14,040 ($300 per hour at 90% of 52 hours (46.8 hours) spent during trial at 10 hours per day- including trial prep, motions and trial time from 12-2, 12-3, 12-4, 12-8, 12-9 and 2 hours on 12-10). Defendant Krening should be awarded $12,690 ($300 per hour for Mr. Simmerly at 90% of 47**

hours (42.3 hours) spent during trial at 9 hours per day for 12-2, 12-3, 12-4, 12-8, 12-9 and 2 hours on 12-10.)[9]

8.   POST-TRIAL MOTIONS

   a.   **Motion to correct jury verdict-Denied** (For Defendant Krening, 2-24-09, # 494, Order denying motion to correct jury verdict) It is not clear from Mr. Simmerly's billing as to time spent on this motion. However, from reviewing his response the court believes 2 hours to be a reasonable time spent and awards **$600 in attorney fees for this motion to defendant Krening.**

   b.   **Motion for Attorney Fees--** The court does not grant time spent on the first motion for attorney fees as the attorneys failed to segregate claims or billed for time unrelated to contract claim. **The court awards 10 hours each to Defendant Krening and Defendant Berry for the motion to award attorney fees for a total of $3000 to Berry and $3000 to Krening (Simmerly's time).**

9.   COSTS

   Court awards $2600 in costs to Defendant Berry but excludes certain costs for legal research based on insufficient information that research was related to contract claims.

   Court awards $339 in costs to Defendant Krening for photocopies and costs of filing counterclaim. Court denies additional costs as insufficient information provided.

## CONCLUSIONS OF LAW

   *1.*   The Agreement for Legal Services mandates an award of reasonable attorney fees and the costs of collection to the prevailing party in any action necessary to collect any fees or costs. The defendants are the prevailing parties.

   2.   Berry and Zundel are entitled to recover their reasonable costs, including attorneys' fees, for enforcing the retainer agreement. The court rejects any arguments that they did not authorize Mr. Krening to bind them to the agreement

---

[9] Mr. Berry took the laboring oar during the trial and motions in limine, presumably since he was the most familiar with the case having been involved from the beginning.

and notes that this is inconsistent with Plaintiffs' prior arguments and actions concerning the agreement.

3.     Krening is entitled to recover his reasonable costs, including attorneys' fees, for enforcing the retainer agreement as modified by his oral agreement with Dr. Wharton.

4.     Judge Canova's ruling of April 10, 2008 with respect to recovery of costs is not the law of the case with respect to any claims other than the professional negligence claim. In that order, although Judge Canova ruled that defendant Krening was not entitled to attorneys' fees, it was intended to apply only to the professional negligence claim. Judge Canova later clarified that order at the request of defendant Krening to indicate that:

> "The court concludes that summary judgment was granted *only* as to the legal professional negligence claims against defendant Krening, said earlier ruling being entirely consistent with the April 10, 2008 Order Denying Defendant Krening's Motion for Judgment......Krening's Amended Motion to Reconsider and Amend or Clarify Order Denying Judgment is DENIED, except to the extent the conclusion set forth above serves to clarify the prior Order. " Supra, May, 12, 2008 Order (Sub No. 206)[10]

5.     Moreover, to the extent that Judge Canova's ruling of April 10 applied to the attorney fees claim under the contract, the Plaintiffs waived their right to rely on Judge Canova's rulings as the law of the case by acquiescing to jury instructions that instructed the jury on a contrary legal standard and by submitting this issue to the jury as a special verdict.

6.     Plaintiffs' claims of professional negligence, emotional distress, negligent hiring and supervision, and breach of fiduciary duty were all tort claims and not based on the contract. Defendant's Consumer Protection Act claim is a statutory claim and not based on the contract.

7.     An action is "on a contract" for purposes of a contractual attorney fee provision, if the action arose out of the contract, and if the contract is central to the dispute. The parties' Agreement for Legal Services was not central to these claims nor did these claims arise out of the parties' contract. Defendants' claims of professional

---

5. It appears that some of the confusion stemmed not only from the multiple motions in this case but by the tendency of former counsel to "overreach" in their proposed orders by adding language inconsistent with the issues before them. For example, the April 10 order proposed by Plaintiffs' former counsel contained findings regarding the purported lack of a contract between Plaintiffs and Defendant Krening which appeared on its face to take that issue from the jury, even though plaintiffs had never filed a cross motion for summary judgment on that issue. Judge Canova's May 12 order clarified the intent of his ruling was only to apply to the professional negligence claim.

negligence, and their claims of emotional distress, concerned the quality of the work performed by Mr. Krening and the resulting administrative law decision. The negligent hiring and supervision claims were predicated on Berry and Zundel's actions in hiring Mr. Krening and did not concern the terms of the written retainer agreement. The defendants' Consumer Protection Act claim concerned the allegedly misleading brochure and allegations concerning the defendants' practices in advertising and soliciting clients. The breach of fiduciary duty claim primarily related to Mr. Krening's alleged failure to devote proper attention to Dr. Wharton's case and allowing other matters, including Mr. Krening's personal litigation, to interfere with his responsibilities to Dr. Wharton.[11] Although the Plaintiffs decided to limit their request for damages to the attorney fees incurred under the fee agreement, they did not raise these claims as affirmative defenses to the defendants' counterclaims for breach of contract nor were they couched as such in the jury instructions.

8.  Defendants are entitled to recover their fees with respect to the Plaintiffs' claim for negligent misrepresentation. The parties' fee agreement was central to certain aspects of these claims. The Plaintiffs moved at trial to be allowed to plead this claim as an affirmative defense to the defendants' enforcement of the contract counterclaim. Defendants then acquiesced to Instruction No. 29 which referred to this claim as an affirmative defense and argued that they were not liable under the fee agreement because of this claim.

9.  If, as in this case, an attorney fees recovery is authorized for only some of the claims, the attorney fees award must properly reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues. The defendants have failed to show that they could not have segregated their claims for much if not most of the pre-trial work. And to the extent they were unable to artificially segregate fees "Ultimately, the fee award must be reasonable in relation to the results obtained." Brand v. Department of Labor & Industries, 91 Wash.App. 280, 294, 959 P.2d 133 (1998), rev'd on other grounds, 139 Wash.2d 659, 989 P.2d 1111 (1999).

10. The defendants are not entitled to any attorney's fees for duplicated effort (including reviewing work of other attorneys where there is no showing that more than one attorney was reasonably necessary) or unproductive time such as unsuccessful motions where no benefit was demonstrated..

---

[11] The plaintiffs at various junctures also claimed that the defendants had breached their fiduciary duty by misrepresenting Mr. Krening's experience and success and in engaging in deceptive billing practices but this did not appear to be a significant issue in the case and was never presented to the jury in any significant fashion.   To the extent that the defendants work on this issue or any other issue is recoverable under the contract, the court finds that this Order appropriately recompenses the defendants for time spent on all aspects of the contract claim and that additional fees would not be reasonable.

11. Under the lodestar method in determining an award of attorney fees as costs, the party seeking fees bears the burden of proving the reasonableness of the fees. *Mahler v Szucs*, 135 Wn. 2d 398. The court must first determine that counsel expended a reasonable number of hours in securing a successful recovery for the client; necessarily, this decision requires the court to exclude from the requested hours any wasteful or duplicative hours and any hours pertaining to unsuccessful theories or claims, and counsel must provide contemporaneous records documenting the hours worked. The lodestar fee, calculated by multiplying the reasonable hourly rate by the reasonable number of hours incurred in obtaining the successful result, may, in rare instances, be adjusted upward or downward in the trial court's discretion. "In principle, it is grounded specifically in the market value of the property in question-the lawyer's services." Dan B. Dobbs, *Awarding Attorney Fees Against Adversaries: Introducing the Problem*, 1986 Duke L.J. 435, 467 (1986).

12. The Court must take an active role in assessing the reasonableness of attorney fee awards, rather than treating cost decisions as a litigation afterthought, and courts should not simply accept unquestioningly fee affidavits from counsel. *Mahler v Szucs*, 135 Wn. 2d 398. This is particularly true with regard to fee claims where the attorney is representing himself and no one has a financial stake in ensuring that the time keeping is accurate and that the attorney is using "billing judgment" to not excessively bill for a relatively modest claim.

13. The amount of the underlying judgment "is relevant in determining the reasonableness of the fee award." *Mayer, 102 Wash.App. at 83, 10 P.3d 408*. While the amount in controversy does not create an absolute limit on fees that figure's relationship to the fees requested is a "vital consideration when addressing their reasonableness". *Scott v.Fetzer*, 122 Wn. 2d 141.

14. The attorneys fees billed are grossly disproportionate to the amount in controversy. A client concerned with the loss of his reputation or even his livelihood might well pay such fees and it is understandable that Krening and Berry zealously represented their interests in this regard. But fees are not recoverable for the malpractice claim or claims unrelated to the contract.

15. It is also true that Krening and Berry didn't pick this fight and, once sued, were entitled to raise their counterclaim for fees. Some of their time spent was unavoidable. They had to spend time responding to defendants' esoteric and lengthy arguments as to why the fees should not be recoverable. Although they could limit their discovery, they were obligated to respond to the Plaintiffs' discovery.

16. Also central to the calculation of an attorney fees award is the underlying purpose of the statute or contract authorizing the attorney fees. Certain fee-shifting statutes may be designed to serve purposes other than the general purpose of most fee shifting statutes: to punish frivolous litigation and encourage meritorious litigation. *Scott Fetzer Co., 122 Wash.2d at 149, 859 P.2d 1210*. . In examining the reported Washington State cases on this issue, it appears that grossly

disproportionate fees are awarded only where a public policy beyond merely the collection of contract claims is present, i.e. consumer protection claims, toxic waste clean-up, workers compensation claims, civil rights, long-arm jurisdiction claims, and recovery of small claims under RCW 4.84 and aggressive advocacy is needed to protect such policies. See, *Fetzer I*, at 125, 786 P.2d 265

17. In this case, defendants are entitled to fees simply based on a contract and not due to any independent public policy.

18. While no reported Washington State cases explicitly disapprove of block billings, such practices make it difficult to evaluate and properly segregate fees. Because defendants have largely failed to adequately identify or segregate their fees, the court is compelled to largely rely on its own independent judgment for determining the reasonableness of fees. For example, the court was able to discern that time was spent on depositions (of at least four) but doesn't have specific information on the time spent in depositions or the subjects covered. Nor does the court know what portions of the interrogatories related to the contract claims. The court is, however, able to tell which motions pertained to the contract claims by a review of the court file.

## NOW THEREFORE IT IS ORDERED AND DECREED THAT:

Defendant Berry is awarded $38,240 in attorneys' fees and $2600 in costs.

Defendant Krening is awarded $37,340 in attorneys' fees and $339 in costs.

Dated: May 6, 2009

Judge Kimberley Prochnau

Dear Counsel:

The following is to advise you of my preliminary rulings on the pending motions.

1.  The court will not consider the Caryl declaration until Mr. Krening agrees to make him available for a deposition; Mr. Krening waived his attorney-client privilege to a limited degree by proffering Mr. Caryl's fee bill. The deposition may enquire into issues raised by the fee bill but shall not otherwise interfere with Mr. Krening's privilege.

2.  The court denies any attorneys' fees for unsuccessful motions, duplicated effort or unproductive time. See, Bowers , 100 Wn. 2d at 597 for limitations on the lodestar amount.

3.  Berry and Zundel are entitled to recover their costs, including attorneys' fees, for enforcing the retainer agreement. The court rejects any arguments that they did not authorize Mr. Krendel to bind them to the agreement and notes that this is inconsistent with plaintiffs' prior arguments and actions concerning the agreement.

4.  Krening is entitled to recover his costs, including attorneys' fees, for enforcing the retainer agreement as modified by his oral agreement with Dr. Wharton. Judge Canova's ruling of April 10, 2008 with respect to recovery of costs is not the law of the case with respect to any claims other than potentially the professional negligence claim. In that order, Judge Canova clarified earlier orders by limiting a summary judgment dismissal to only the professional negligence claim. As part of that order, Judge Canova ruled that defendant Krening was not entitled to attorneys' fees. The issue regarding the right to attorneys' fees was not brought as a summary judgment motion but as an argument against defendant Krenings' requests. While Judge Canova adopted the plaintiffs order without changes, any conclusions of law in that order with respect to the right to seek attorneys' fees on other claims is dicta and at best advisory.

5.  Moreover, the plaintiffs waived any right to rely on Judge Canova's rulings as the law of the case by acquiescing to jury instructions that instructed the jury on a contrary legal standard and submitted this issue to the jury as a special verdict. Although the retainer agreement was initially between Wharton and the law firm of Berry and Zundel, the jury found that Dr. Wharton agreed to continue that contract with Mr. Krening in modified form and did not enter into a new contract.

6.  Going to the merits of the arguments with respect to Krening's right to recover attorneys' fees, the court adopts the jury's findings that Dr. Wharton initially entered into a written retainer agreement with Berry and Zundel at the behest of Mr. Krening but after Mr. Krening left the law firm of Berry and Zundel, Mr. Krening and Dr. Wharton, agreed to modify the existing contract by substituting Mr. Krening as the principal and changing some of the payment terms.

7.  There is no unfairness or surprise to Dr. Wharton in requiring her to adhere to the terms of the retainer agreement. She had previously been provided and signed a written agreement outlining all the relevant terms of the contract. The only oral modifications were to pay Mr. Krening instead of Berry and Zundel for the work that was being done as well as to provide her a more beneficial attorney fee rate. A signatory to a written agreement may be bound to the attorneys' fee provision in the contract even when the agreement is assigned to a third party without the consent of the

signatory, where the essential terms of the contract are not violated. See, **Clients' Service Inc. v. Pupo,** 71 Wash.2d 610. (1967) (Where owner agreed to pay reasonable attorney's fee and all costs of collection of commission on sale of tavern, assignment by broker to collection company of its claims to commission on sale was sufficient to pass to collection company contract right to recover reasonable attorney's fee in accordance with listing agreement.)

8. The defendants seek recovery of reasonable attorneys' fees and costs for all work done in the case. However, a very substantial amount of work was done with regards to defending against plaintiff's claims, not in prosecuting the counter claims of breach of contract.

9. Defendant's claims of professional negligence, emotional distress, negligent hiring and supervision, and breach of fiduciary duty were all tort claims and not based on the contract. Defendant's Consumer Protection Act claim is a statutory claim and not based on the contract.

10. It is true that if an action in tort is based on a contract containing an attorney fee provision, the prevailing party is entitled to attorney fees. An action is "on a contract," for purposes of contract is central to the dispute. For example, a house purchaser's misrepresentation action against vendor was "on a contract" for purposes of invoking attorney fee provision in sales agreement, as action arose out of the parties' agreement to transfer ownership of house from vendor to purchaser. **Brown v. Johnson**109 Wash.App. 56, (2001)a contractual fee provision, if: (a) the action arose out of the contract; and (b) if the Purchaser's breach of fiduciary duty and negligence claims against real estate broker, based on broker's alleged lack of due diligence in drafting earnest money agreement and in negotiating purchase of property, and based on broker's alleged improper exercise of its authority under agreement to disburse earnest money, qualified as claims "on a contract," the successful pursuit of which by purchaser warranted award of contractual attorney fees. Action is "on a contract," for purposes of contractual attorney fee provision, if action arose out of contract and if contract is central to dispute. **Edmonds v. John L. Scott Real Estate,** 87 Wash.App. 834, (1997). See, Also, **Hill v. Cox,** 110 Wash.App. 394, (2002).

11. In the instant case, the contract was not central to the above disputes nor did these claims arise out of the contract. Even if no written retainer agreement had ever existed, the above claims of defendant would have not have significantly changed. Defendants' claims of professional negligence, and their claims of emotional distress, concerned the quality of the work performed by Mr. Krening and the resulting administrative law decision. As the jury instructions reflect, the duty to perform under the fee agreement was not contingent upon the attorneys' success. The negligent hiring and supervision claims were predicated on Berry and Zundel's actions in hiring Mr. Krening and did not concern the terms of the written retainer agreement. The CPA claims concerned the allegedly misleading brochure and allegations concerning the defendants' practices in advertising and soliciting clients. The breach of fiduciary duty was argued to the jury as relating to Mr. Krening's alleged failure to devote proper attention to Dr. Wharton's case and allowing other matters, including Mr. Krening's personal litigation, to interfere with his responsibilities to Dr. Wharton. Although plaintiffs decided to limit their request for damages to the attorneys' fees incurred under the fee agreement, they did not raise these claims as affirmative defenses to the defendant's counterclaim for breach of contract nor were they couched as such in the jury instructions.

12. However, defendants are entitled to recover their fees with respect to the negligent misrepresentation claim. Not only was the fee agreement central to certain aspects of this claim, (Dr. Wharton claimed at trial that she was induced to enter into the contract by negligent misrepresentations and initially claimed

that the billings were inflated), but defendants affirmatively moved during the trial to be allowed to plead this claim as an affirmative defense to the enforcement of the contract counterclaim. Defendants then acquiesced to Instruction No. 29 which referred to this claim as an affirmative defense and argued that they were not liable under the fee agreement because of this claim.

13. While the court is not unsympathetic to defendants' arguments that plaintiffs' claims had the effect of delaying resolution of their claims (and to both sides' arguments that the costs of litigation can impede justice) , this is a not uncommon aspect of litigation and cannot be addressed by this court taking it upon itself to abrogate the well-settled American rule.

The court requests counsel use this ruling to draft proposed preliminary findings of fact and conclusions of law. Counsel should provide both a paper and electronic copy to the court. Further, defendants should provide new fee declarations which segregate time spent only on the contract claim and negligent misrepresentation defense. The court requests that any work done on pre-trial motions identify by Docket number the motion and resulting order. The court also expects that it will not see duplicate billings i.e. more than one attorney for each defendant working on a particular aspect of the case. Counsel are welcome to request a telephone conference if after conferring in good faith, they are unable to reach agreement on a schedule to resolve the remaining issues, including the deposition of Mr. Caryl.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

MARCIA M. WHARTON and S.
PAUL SMITH, husband and
wife, and the marital
community composed thereof;
and COLE WHARTON REEVES, a
minor child, by and through
his guardian, Marcia M.
Wharton,

           Plaintiffs,

      v.

BERRY & ZUNDEL, P.L.L.C., a
Washington professional
limited liability company,
and ERIC T. KRENING,

          Defendants.

NO. 07-2-14321-1 SEA

JUDGMENTS ON SPECIAL VERDICT

[CLERK'S ACTION REQUIRED]

I. JUDGMENT SUMMARY

Judgment Summary is as follows:

A. Judgment Creditor         BERRY & ZUNDEL, P.L.L.C.

B. Judgment Debtors         MARCIA M. WHARTON and S.
PAUL SMITH, husband and
wife, and the marital
community composed thereof

C. Principal Judgment Amount    $ 8,040.00

JUDGMENTS ON
SPECIAL VERDICT



C. Nelson Berry III
1708 Bellevue Avenue
Seattle, Washington 98122
(206)441-5444 FAX (206)838-6346

D. Interest to Date of Judgment          $ 2,008.90

E. Attorney Fees                          $ ~~37.5~~ 38,240

F. Costs                                  $ ~~3,140.95~~ 2600

G. Other Recovery Amounts                 $    N/A

H. Principal Amount of Judgment shall bear interest at the statutory rate of 12% per annum.

I. Attorney fees, costs and other recovery amounts shall bear interest at the statutory rate of 12% per annum.

J. Attorney for Judgment Creditor         C. Nelson Berry III

K. Attorneys for Judgment Debtor          Pro Se

## II.  JUDGMENT SUMMARY

Judgment Summary is as follows:

A. Judgment Creditor                      ERIC T. KRENING

B. Judgment Debtors                       MARCIA M. WHARTON and S. PAUL SMITH, husband and wife, and the marital community composed thereof

C. Principal Judgment Amount              $ ~~27,833.80~~ 27,833

D. Interest to Date of Judgment           $    446.00

E. Attorney Fees                          $ 37,340

F. Costs                                  $  339

G. Other Recovery Amounts                 $    N/A

H. Principal Amount of Judgment shall bear interest at the statutory rate of 12% per annum.

I. Attorney fees, costs and other recovery amounts shall bear interest at the statutory rate of 12% per annum.

J. Attorney for Judgment Creditor         Paul E. Simmerly

K. Attorneys for Judgment Debtor          Pro Se


THIS MATTER having come on duly and regularly for trial

JUDGMENTS ON
SPECIAL VERDICT          - 2 -

C. Nelson Berry III
1708 Bellevue Avenue
Seattle, Washington 98122
(206)441-5444 FAX (206)838-6346

before the undersigned Judge; and the Jury having entered its Special Verdict Form on December 10, 2008, a true and accurate copy of which is attached hereto and incorporated herein by reference; and the Court having duly considered the Defendants' Motion for an Award of Reasonable Attorney Fees and Costs of Collection, and the declarations and pleadings submitted in support of and opposed to that motion; and being otherwise fully advised in the premises; now, therefore, it is hereby

ORDERED that judgment shall be entered against Marcia M. Wharton and S. Paul Smith, husband and wife, and the marital community composed thereof, and in favor of Berry & Zundel, P.L.L.C. in the principal amount of $8,040.00; and it is further

ORDERED that judgment shall be entered against Marcia M. Wharton and S. Paul Smith, husband and wife, and the marital community composed thereof, and in favor of Berry & Zundel, P.L.L.C. for prejudgment interest on this liquidated amount from December 31, 2006 through the date of the entry of this Judgment on Special Verdict in the amount of $2,008.90; and it is further

ORDERED that judgment shall be entered against Marcia M. Wharton and S. Paul Smith, husband and wife, and the marital community composed thereof, and in favor of Berry & Zundel, P.L.L.C. for its attorney fees in the amount of $ _38,240_ , which the Court finds to be reasonable and necessary; and it is further

ORDERED that judgment shall be entered against Marcia M. Wharton and S. Paul Smith, husband and wife, and the marital

JUDGMENTS ON
SPECIAL VERDICT          - 3 -

C. Nelson Berry III
1708 Bellevue Avenue
Seattle, Washington 98122
(206)441-5444 FAX (206)838-6346

community composed thereof, and in favor of Berry & Zundel,
P.L.L.C. for its costs of collection in the amount of $~~3,080.85,~~ *2600/100*
and it is further

ORDERED that judgment shall be entered against
Marcia M. Wharton and S. Paul Smith, husband and wife, and the
marital community composed thereof, and in favor of Eric T.
Krening in the principal amount of $33,400.00, less an offset
in the amount of $5,120.20 for a judgment entered on April 10,
2008, and less the interest which has accrued on that judgment
through the entry of this one in the amount of $446.00, for a
net judgment in favor of Eric Krening in the amount of
$27,833.80; and it is further

ORDERED that judgment shall be entered against Marcia
M. Wharton and S. Paul Smith, husband and wife, and the
marital community composed thereof, and in favor of  Eric T.
Krening for his attorney fees ~~in~~ the amount of $ *37,340.10*
which the Court finds to be reasonable and necessary; and it
is further

ORDERED that judgment shall be entered against Marcia
M. Wharton and S. Paul Smith, husband and wife, and the marital
community composed thereof, and in favor of Eric T. Krening for
his costs of collection in the amount of $ ~~~~ *335*

Done in Open Court this 17th day of April, 2009.

_____
Honorable Kimberley Prochnau
Superior Court Judge

C. Nelson Berry III
1708 Bellevue Avenue
Seattle, Washington 98122
(206)441-5444 FAX (206)838-6346

Presented By:

C. Nelson Berry III
WSBA #8851
Attorney for Defendant
Berry & Zundel, P.L.L.C.

JUDGMENTS ON
SPECIAL VERDICT

- 5 -